IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| BENNY C. STONE,<br>   Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br>   Defendant. | )<br>)<br>)   **Case No. 4:11-CV-00605 JTK**<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

Plaintiff Benny C. Stone brings this action for review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for disability insurance benefits (DIB) and supplemental security income (SSI). Both parties have submitted appeal briefs, and the case is ready for decision.[1] The only issue before the Court is whether the Commissioner's decision is supported by substantial evidence. After reviewing the administrative record and the arguments of the parties, the Court finds that the Commissioner's decision is not supported by substantial evidence.

### **Procedural History**

Plaintiff protectively filed his applications for DIB and SSI on February 12, 2009, alleging disability[2] since February 5, 2009, due to back and neck problems in addition to numbness and tingling in his arms and hands. Plaintiff met the insured status requirements because his date last insured was December 31, 2013.

---

[1] The parties have consented to the jurisdiction of a Magistrate Judge. (Doc. No. 4).

[2] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3).

Plaintiff's claims were denied at the initial and reconsideration levels. A hearing was held on March 1, 2010, before an Administrative Law Judge (ALJ). That hearing was attended by Plaintiff, his attorney, and a vocational expert (VE). On April 29, 2010, the ALJ issued an unfavorable decision denying Plaintiff's claim, and on June 21, 2011, the Appeals Council denied his request for review.

## Administrative Proceedings

Plaintiff was 43 years old at the time of his alleged disability onset date. He was in special education during high school, and he dropped out at the age of 19 after repeating the tenth grade three times.

The ALJ applied the five-step sequential evaluation process[3] to Plaintiff's claim. Plaintiff satisfied the first step because he had not engaged in substantial gainful activity since his alleged onset date. At the second step, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine, carpal tunnel syndrome, and depression. At the third step, the ALJ found there was no impairment[4] or combination of impairments that met or equaled the level of severity for any impairment listed in 20 C.F.R. § 404, Subpt. P., App. 1. Further, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but he also concluded that Plaintiff's statements concerning the intensity,

---

[3] The five-part test asks whether the claimant: (1) is currently employed; (2) severely impaired; (3) has an impairment or combination of impairments that meets or approximates a listed impairment; (4) can perform past relevant work; and if not, (5) can perform any other kind of work. Through step four of this analysis, the claimant has the burden of showing that she is disabled. Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that a claimant can perform. *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008).

[4] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

persistence, and limiting effect of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity[5] (RFC) to perform sedentary work.[6]

To be specific, the ALJ found that Plaintiff could: occasionally lift and carry ten pounds; frequently lift and carry less than ten pounds; sit for six hours during an eight-hour workday; stand and walk for two hours during an eight-hour workday; occasionally climb, balance, crawl, kneel, stoop, and crouch; and perform work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required, and required supervision is simple, direct, and concrete. The ALJ found that Plaintiff could not "perform frequent, rapid repetitive flexion or extension of his wrists."[7]

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work[8] as a logger. At step five, the ALJ found that Plaintiff was not disabled because he was capable of

---

[5] A claimant's RFC is what he or she can do despite his or her limitations. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. 20 C.F.R. § 404.1545. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (1996).

[6] The definition of "sedentary work" is as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a); 416.967(a).

[7] It is unclear from the ALJ's use of commas and conjunctions, but the Court will assume that the ALJ intended to say "frequent, rapid, and repetitive flexion or extension of his wrists." If he intended to use "or" rather than "and," then it is unclear how the VE's testimony was of any use.

[8] "Past relevant work" means work that was performed within the last fifteen years, was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. §§ 404.1560(b); 416.960(b).

3

performing the requirements of representative occupations such as nut and bolt assembler or bench assembler.

## Standard of Review

The Court's limited function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). The Commissioner's decision cannot be reversed merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). However, "[t]he substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Id.* (quoting *Smith v. Heckler*, 735 F.2d 312, 315 (8th Cir. 1984)). "In reviewing the administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## Analysis

On appeal, Plaintiff contends that the ALJ 1) improperly discounted Plaintiff's subjective testimony, 2) lacked substantial evidence to support his RFC assessment, and 3) failed to fully develop the record.

1. **Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony**

Plaintiff's claims were not supported by the objective medical evidence, his depression appeared to be successfully controlled through medication, there were extended periods where Plaintiff did not require medication for disabling symptoms, and his doctors typically recommended conservative treatment. His subjective allegations also conflicted with his daily activities and claims of disability. Plaintiff alleged that he could not lift anything with his hands, had a hard time bending his arms to comb his hair, could not hold a razor, had difficulty feeding himself, had to fight pain to wipe himself in the bathroom, and could not do any household chores. These claims were inconsistent with Plaintiff's statements that he fished occasionally (Tr. 428), spent 1.5-3 hours preparing meals with several courses, went outside every day to check the mail or go to a gas station, went shopping once a week for two hours or longer, drove a car, and cared for his fiancée who had major medical problems. *See Brown v. Barnhart*, 390 F.3d 535, 541 (8th Cir. 2004) (noting that caring for handicapped daughter when part-time assistant was not present undercut claimant's allegations of disability).

After carefully reviewing the record, the Court concludes that the ALJ properly evaluated the record evidence as a whole in a manner that was consistent with the Eighth Circuit's holding in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).[9]

2. **Whether the ALJ Properly Assessed Plaintiff's RFC**

Plaintiff also argues that the ALJ failed to properly assess his RFC. The Court agrees. On March 27, 2009, State agency medical examiner Bill F. Payne found that Plaintiff was capable of performing light work with carpal tunnel syndrome restrictions and "no overhead work b/l." Plaintiff had previously been diagnosed with a cervical herniated disc, stenosis, and radiculopathy, so he

---

[9] "Under *Polaski*, the ALJ must consider the claimant's prior work history, as well as observations by third parties regarding the claimant's: (1) daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

underwent an anterior cervical discectomy fusion at the C5-6 level on May 15, 2009. On June 1, 2009, State agency medical examiner Lucy Sauer opined that Plaintiff was capable of performing "E-3 to light RFC with no overhead work B." In his opinion, the ALJ incorrectly noted that "[t]he state medical consultant opined that claimant was able to perform a light range of work limited *only* by no frequent, rapid and repetitive flexion or extension of the wrists." (Tr. 20) (emphasis added). He further indicated that the State agency examiners' opinions were given some weight.

On February 12, 2010, Dennis W. Berner, M.D., examined Plaintiff for a disability determination. Dr. Berner made the following statements in the conclusion of his report:

> In summary, Mr. Stone has degenerative disc disease of the neck and has had one previous laminectomy in May of 2009. He persists in having lots of upper extremity pain. He has good strength and symmetrical tongue. He has poor endurance and pain increases with lifting, walking or prolonged sitting. He also has chronic low back pain, with less well documented pathology. He exhibits signs and symptoms of depression and chronic peptic acid disease as well as mild hypertension.
>
> I think a work capacity evaluation by a trained physical therapist is in order. They might be able to better define his ability to return to work. I have recommended he continue the same medications. He should lose weight, do a lot of stretching exercises and use some heat and range of motion activity and begin a walking program trying to build his endurance.

The ALJ noted that Dr. Berner assigned no specific work-related limitations and indicated that Dr. Berner's opinion was given significant weight. Given Dr. Berner's recommendation for a work capacity evaluation to be performed by a physical therapist, his lack of confidence in his capability to define Plaintiff's ability to work, and the opinion's lack of any specificity regarding Plaintiff's abilities, the Court does not believe that Dr. Berner's opinion provides substantial evidence to support the ALJ's opinion. It cannot be said that the ALJ based his opinion on the record as a whole because he did not properly consider several portions of the record.

The Court is troubled by the fact that the ALJ misstated the opinions of the State agency examiners. The parties have both made arguments concerning the numerous typographical errors in the ALJ's opinion, but it does not appear that this mistake was merely typographical. The ALJ included a wrist limitation in response to Payne's comment regarding carpal tunnel restrictions, but he failed to include or even acknowledge the limitation regarding overhead work. Indeed, the ALJ's use of the word "only" gives the impression that he failed to consider this limitation at all. *See* 20 C.F.R. § 404.1527 (requiring ALJ to consider these opinions). This was error because ALJs are required to consider these opinions. *See, e.g.*, 20 C.F.R. § 404.1527(e)(2)(i) ("[A]dministrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence . . . .").

The ALJ also appeared to substantively misstate the record when he said that there was a "significant gap" in treatment after Plaintiff's May 16, 2009 surgery because Plaintiff did not go to the doctor until September 3, 2009. (Tr. 19). This was error because Plaintiff submitted evidence at his hearing that he presented to the doctor with complaints of pain on July 21, 2009. (Tr. 32, 449). He also visited the doctor earlier on June 9, 2009. (Tr. 447). Once again, it appears that the ALJ failed to consider evidence that would have been important to his decision. The Court does not believe that the ALJ's misstatements of the record were harmless errors.

### 3. Whether the ALJ Properly Developed the Record

The Court does not need to reach a conclusion regarding Plaintiff's argument concerning the ALJ's development of the record at this time, but the Court would note that the ALJ should provide more explanation regarding Plaintiff's ability to perform the requirements of a nut and bolt assembler or a bench assembler. The descriptions that are contained within the Dictionary of Occupational Titles

regarding these occupations would seem to conflict with Plaintiff's inability to perform frequent, rapid, and repetitive flexion or extension of his wrists. "Generally, when expert testimony conflicts with the DOT, it is the DOT which controls." *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995) (citing *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995)). For instance, the description of a nut and bolt assembler is as follows:

> Couples and packages nuts and bolts: Screws nut on bolt by hand and holds nut in chuck of nut-turning machine that spins and tightens nut on bolt. Weighs or counts specified amounts of nuts and bolts, and records number of units on production form. Pushes box or carton along bench or onto conveyor. May tie long bolts into bundles, using wire. May feed nuts and bolts into hopper of machine that automatically couples and packages nuts and bolts.

D.O.T. 929.587-010. Further, this position is described as involving frequent reaching, handling, and fingering. The description of a bench assembler contains the following passage:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.

D.O.T. 706.684-022. This position is also described as involving frequent reaching, handling, and fingering. These positions clearly involve frequent and repetitive flexion or extension of the wrists under the DOT's description of these jobs. Further, the DOT recognizes that the "constant strain of maintaining a production rate pace, especially in an industrial setting, can be physically demanding." D.O.T. App'x C, 1991 WL 688702. It seems unlikely that industrial assemblers are not expected to perform their duties at a rapid pace.

**Conclusion**

Accordingly, judgment is entered for Plaintiff and against Defendant. The final decision of the Commissioner is reversed pursuant to 42 U.S.C. § 405(g) (sentence four), and this case is remanded for further proceedings consistent with the opinion of the Court.

IT IS SO ORDERED this 7th day of December, 2012.

_____
United States Magistrate Judge